FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

01 FEB 14 AM 9: 46

U.S. DISTRICT COURT
N.D. OF ALABAMA

M.H. FOX, *et al.*,       )
                          )
          Plaintiffs,     )
                          )
v.                        )          Case No. CV-99-TMP-1612-M
                          )
TYSON FOODS, INC.,        )
                          )
          Defendant.      )

ENTERED

FEB 1 4 2001

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This cause is before the court on two motions filed by the defendant, Tyson Foods, Inc. ("Tyson"), and a motion for certification as a collective action filed by the plaintiffs. On September 24, 1999, Tyson filed a motion for partial summary judgment seeking judgment in its favor on the claims of 10 of the 11 named plaintiffs, contending that their claims for compensation for time spent donning, doffing, and cleaning certain sanitary and protective equipment were due to be dismissed pursuant to 29 U.S.C. § 203(o). On December 27, 1999, Tyson filed another motion for partial summary judgment seeking dismissal of: (1) the mastercard claims of plaintiffs Teresa Brothers, Princess Brown, and Ava Joyner; the overtime compensation claims of all plaintiffs for (2) activities performed before and after the plaintiffs' shifts, and (3) activities performed at the beginning and end of the unpaid

227

meal period; and (4) the off-the-clock meal period claims of plaintiffs Angela Hatchett, Sharon Mitchell, Ava Joyner, and Pamela Woodworth.  Defendant filed supplemental submissions in support of its motions on May 11, 2000, and September 20, 2000.  This matter has been fully briefed, and the court has considered the evidence and the arguments set forth by both parties.  The parties have not consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court submits this report and recommendation.

## I.  SUMMARY JUDGMENT STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings.  Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is

3

no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient

4

evidence on which the jury could reasonably find for the plaintiff. <u>Anderson</u>, 477 U.S. at 254; <u>Cottle v. Storer Communication, Inc.</u>, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. <u>Anderson</u>, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  FACTS

Applying these standards for addressing a motion for summary judgment, the following facts appear to be undisputed or, if disputed, taken in a light most favorable to the plaintiffs. It is emphasized that these facts are viewed most favorably for the plaintiffs; whether they can be established at trial must await another day.

Eleven individual plaintiffs brought this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, asserting that they have not been adequately compensated for work they performed in various Tyson chicken-processing plants. The plaintiffs seek certification of this case as a collective action.

5

In separate motions, Tyson seeks summary judgment against 10 of the 11 named plaintiffs on their overtime compensation claims relating to the donning, doffing, and cleaning of certain sanitary and protective equipment pursuant to 29 U.S.C. § 203(o)[1] and against all plaintiffs on the donning, doffing, and cleaning claims on the basis that the activities are not "work" within the ambit of the FLSA and are not compensable pursuant to the Portal-to-Portal Act. Tyson also seeks summary judgment against plaintiffs Brothers, Brown, and Joyner on their claims that they are denied compensation for time worked by the employer's use of a "mastercard" timing system.  Finally, Tyson moves for summary adjudication on the meal period claims of Hatchett, Mitchell, Woodworth, and Joyner.

Plaintiffs' claims arise from their employment as workers in several of defendant's chicken-processing plants.  Although the plaintiffs hold different positions in different departments at various Tyson plants, all must spend at least a few minutes before their shifts to retrieve and don certain items of sanitary and protective equipment, and after their shifts to clean, doff, and return the same equipment.  At two break periods that Tyson allows during each shift, plaintiffs must remove some or all of the sanitary and protective equipment in order to enter the bathrooms,

---

[1]    Tyson seeks summary judgment on the claims of all plaintiffs except Sharon Mitchell, who was employed in a non-union facility.

6

the cafeteria, or other areas of the plant outside the work area. Before the break ends, employees must put the equipment back on and return to their work stations.

Although the type and amount of gear required depends upon the workers' job duties, all employees must wear some of the gear required by Tyson. All plaintiffs are required to wear a white cotton smock[2] provided by Tyson. Most plaintiffs also must wear a hair net and beard net, earplugs, and safety glasses.[3] Some plaintiffs also are required to wear plastic aprons over their smocks, thin knit gloves, cotton liner gloves, rubber outer gloves, mesh or chain gloves, plastic sleeve guards, and safety shoes or boots. In addition, plaintiffs who work in "live kill" or other jobs where they are in danger of being pecked or cut must also don

---

[2]      The smocks are described as a cotton outer garment worn over the street clothes, which opens in the back like a surgeon's gown, and is laundered daily on the premises. Plaintiffs retrieve a clean smock before their shifts begin, which may require waiting in long lines if plaintiffs do not arrive well before the shift begins, and deposit the soiled gowns in a bin as they leave their work areas.

[3]      Hair nets are required for all workers, and beard nets for any worker with facial hair. Most plaintiffs also wear earplugs and safety glasses, as required by Tyson and federal workplace safety standards. The nets, earplugs, and glasses are apparently kept by the workers and can be reused until worn out. New nets and earplugs are sold on the plant premises by Tyson, where employees also may be required to wait in line to make such purchases.

7

protective mesh gloves, boots, dust masks, plastic sleeve covers, and hard plastic arm guards.[4]

The plaintiffs are required to wear the designated equipment both for their own safety and to assure the sanitary condition of Tyson's final product.  It is undisputed that Tyson mandates the wearing of such equipment and does not compensate its employees for the time spent donning, doffing, and cleaning the sanitary and protective equipment.  While certain pieces of equipment, like shoes, hair nets, beard nets, and earplugs can be worn or brought from home, smocks, aprons, gloves, face shields, and guards must be donned after the employee arrives at the plant.  A clean smock must be obtained each day by every employee, and this usually requires the employee to wait in line at a supply shop for as much as 10 to 15 minutes.  Also, many employees must wait in line daily to obtain other supplies, like rubber gloves, aprons, and glove liners that are torn or damaged during work.  Although such supplies are issued for a week at a time, many require replacement daily due to wear and tear.

---

[4]     Items such as the arm guards and sleeve covers must be washed at cleaning stations located around the plant.  At some cleaning stations, plaintiffs must wait in line to clean their equipment before leaving the plant but after their paid shift has ended.

After the employee has obtained his or her gear, it is then donned, which takes from two to five minutes more.  Those employees working in production areas must then wash their aprons and gloves in a sanitary solution set up in wash basins at the entrance to production areas.  Because of the number of employees attempting to wash their gear and the limited number of wash basins, employees stand in line for an additional two to ten minutes for this purpose.  Thus, upon arriving for work, employees must spend from 14 to 25 minutes obtaining a smock and supplies, donning the equipment, and washing their aprons and gloves in a sanitary solution before their compensable shift begins.

Twice a day, employees are entitled to a thirty-minute break.[5] If an employee wishes to leave the production area to go to the cafeteria or restroom, he must remove all sanitary equipment and leave it in a locker.  Thus, at the beginning of each break, most employees remove their aprons, gloves, sleeve guards, and smocks and store them in a locker, while keeping on their hair nets, beard nets, and safety shoes.  At the end of the break, the employee must put back on all of this sanitary equipment, re-wash it, and return

---

[5]     It appears that whether this break is compensated varies from plant to plant.  The plaintiffs' evidence showed that at most plants, the thirty-minute breaks were unpaid.  But it also showed that at a few plants one of the breaks is paid or, perhaps, a few minutes (usually 12 minutes) of each break is paid.

9

to the production line.  This doffing, donning, and washing at the beginning and end of a break consumes perhaps as much as 10 to 12 minutes of the break and, in most instances, is not compensable time.

At the end of the shift, employees again go through the process of washing and removing the sanitary equipment they wear. First, before leaving the production area (but after the "line time" or "mastercard" time has ended), they must wash their aprons, sleeve guards, and gloves (both rubber and mesh "cutting" gloves) in a sanitary solution, remove them, and store them in a locker. They then remove their smocks and deposit them in a laundry hamper on the way out of the plant.  If an employee utilizes a knife or other portable piece of equipment in his or her job, it also is washed in the sanitary solution before being returned.  This washing and doffing process may take as much as 10 to 12 additional minutes each day.

Most of the plaintiffs are paid according to a timekeeping system known as "line time" or a "mastercard."  Upon arriving at work, plaintiffs swipe a card that records their attendance.  That card, however, is not used to record time worked.  At some time after arriving at the plant, obtaining smocks and other gear, putting on the gear, and reporting to a work station, a "mastercard" is swiped to record the time that the production line

10

begins work, which corresponds with the time that the first chicken begins to move down the line.  When the last chicken is placed onto the line, the mastercard is again swiped to stop production-line time, and the thirty-minute break begins.  The mastercard records time at the end of breaks and is finally swiped again at the end of the shift when the last chicken is placed on the line.  The plaintiffs assert that they are required to be at their positions on the line before the mastercard is swiped, and that they must remain in their positions after the mastercard is swiped to end time until the last chicken passes the station at which they work.[6] Obviously, this time varies from just a minute or two for those at the beginning of the line to several minutes for those near the end of the line.[7]   Plaintiffs complain that the mastercard system results in plaintiffs working without compensation during breaks and after the shift ends.

---

[6]     To be clear, the plaintiffs dispute Tyson's evidence that they are not required to be at their work station **until** the chicken product actually arrives at it.  They contend that all employees must be on the production line when the product first begins to move down the line even though it may be several minutes before it reaches the employees further down the line.

[7]     Tyson disputes this scenario and claims that the plaintiffs arrive in a staggered fashion and leave in a staggered fashion, consequently working the same amount of time as the mastercard records, even though they work slightly different times; i.e., the plaintiff who must work 12 minutes after the mastercard is swiped at the end of the shift is not required to begin work until 12 minutes after the card is swiped at the beginning of the shift.

11

### III.  § 203(o)

Tyson has moved for summary judgment on the claims of all but one plaintiff, asserting that the claims for the donning, doffing, and cleaning are not compensable pursuant to 29 U.S.C. § 203(o), which states:

> Hours Worked. - In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

Accordingly, Tyson asserts that the donning, doffing, and cleaning time claimed by plaintiffs who work in unionized plants,[8] and are thus covered by a collective bargaining agreement, are excluded from the FLSA.   The court is not persuaded, however, that the activities for which these plaintiffs seek compensation are included within the narrow exception carved out by Section 203(o). More specifically, the court does not deem the donning and doffing of safety and sanitary equipment to be "changing clothes," nor does the court find that the cleaning of such equipment is encompassed by the term "washing."

---

[8]    It is undisputed that the only named plaintiff who works in a non-unionized Tyson plant is Sharon Mitchell.

The plaintiffs correctly point out that, since § 203(o) establishes an exemption to the FLSA, it must be narrowly construed. Put another way, the court must recognize Congress's intent to provide "broad coverage" under the FLSA. See Dunlop v. City Electric, Inc., 527 F.2d 394, 399 (5th Cir. 1976). The burden of showing the applicability of the exemption is on the party urging its application, here, the defendant.

## A.   "Changing Clothes"

In support of its position that the exclusion set forth in 29 U.S.C. § 203(o) applies to employees' donning, doffing, and cleaning of safety and sanitary gear, Tyson relies upon an opinion from the Northern District of Iowa in which the court applied Section 203(o) to exclude compensation to employees in a unionized meat-packing plant for the time spent donning and doffing mesh gloves, goggles, helmets, arm guards, boots, steel-mesh aprons, and other protective gear. Saunders v. Morrell, 1991 WL 529542 *3 (N.D. Iowa 1991). While seeming to assume that such "safety equipment" constituted "clothes" within the meaning of § 203(o), the court focused its discussion on the fact that previous collective bargaining agreements included a period of time for "clothes changing," but the most recent agreements had not because the "clothes changing" time had been expressly negotiated away by the union. In Saunders, the plaintiffs essentially acquiesced to

13

the donning and doffing as "clothes changing" and, through the union, had foregone payment for "clothes changing" time in the 1983 collective bargaining process. The court in Saunders held that the plaintiffs were "barred from any recovery for clothes-changing time by virtue of contractual exclusion." Id. Clearly, that holding arose not from any examination of the "clothes" at issue, but from the fact that the union had contracted away the employees' rights to be compensated for that activity and could not now demand what it had voluntarily given away. Accordingly, this court finds that Saunders does not answer the question whether the gear used by Tyson employees is "clothing"[9] under § 203(o).

Tyson next relies on Nardone v. General Motors, Inc., 207 F. Supp. 336 (D.N.J. 1962), in support of its proposition that the activities complained of by plaintiffs are "clothes changing." In Nardone, a group of metal finishers in an auto body shop filed an action seeking compensation for obtaining tools and putting on coveralls, gloves, aprons, goggles, and hoods before their shift

---

[9]     The court recognizes that plaintiffs in the instant case argue that, if such safety equipment is not "clothes" within the meaning of § 203(o), it does not matter that the union may have given away "clothes changing" time in contract negotiations. The holding in Saunders at least implies that such safety equipment as steel-mesh gloves and aprons can be regarded as "clothes." Despite Saunders, this court remains persuaded that there is a difference between mere clothing and specialized pieces of gear required for safety and sanitation. Compare Reich v. Monfort, Inc., 144 F.3d 1329 (10th Cir. 1998); Reich v. IBP, Inc., 38 F.3d 1123 (10th Cir. 1994).

began, and for putting away tools, removing the gear, washing up, and taking a shower at home.   As in Saunders, the court did not examine whether donning and doffing such gear qualified as clothes changing, but rather relied upon the fact that the defendant had shown "the history of its dealings with the Union as being that as would exempt washing and clothes changing time from payment."   Id. at 340.   Defendant also showed that the bargaining negotiations "encompassed such a problem."   Id.   In this case, the defendant has not shown that the issue of non-payment for the donning, doffing, and cleaning has ever been addressed in union negotiations.   The parties simply agree that Tyson has never paid for such activities.  Such is insufficient to place this case on equal footing with Saunders or Nardone.

Finally, the defendant relies upon Williams v. W.R. Grace & Co., 247 F. Supp. 433 (E.D. Tenn. 1965), to support its position that Section 203(o) excludes payment for Tyson employees' donning, doffing, and cleaning of safety and sanitary equipment.   In Williams, the court noted that "[t]he defendants have shown conclusively, and without dispute, that the history of their dealings" with the union showed a practice of exempting clothes-changing and washing, and that "this problem was consistently an active issue in the negotiations."   Id. at 435.   Thus, the court

finds that <u>Williams</u>, like <u>Saunders</u> and <u>Nardone</u>, is distinguishable from the instant case.

The defendant further argues that the plain meaning of "changing clothes" encompasses the activity described by the plaintiffs.  In more than 20 declarations submitted by plaintiffs' counsel, Tyson employees describe waiting in lines to obtain smocks and aprons, putting on hair nets, beard nets, earplugs, and goggles, and in some instances donning layer upon layer of protective gear that helps ward off the cold temperatures of the processing plant and the sharp blades used in killing and deboning the chickens.  At least one worker describes donning thin knit gloves, followed by cotton liner gloves, followed by rubber gloves, and finally mesh protective gloves.  This process does not resemble what most people would define as "changing clothes."

"Changing clothes" is an everyday, plain-language term that describes what most people do every day – taking off pajamas to put on work clothes in the morning, or taking off dress clothes to put on casual wear in the evening.  In this case, the Tyson workers "changed clothes" at home.  All of the sanitary and protective gear at issue here is worn over, and in addition to, the employees' street clothes.  Given the liberal, remedial purpose of the FLSA, its "broad coverage," <u>Dunlop v. City Electric, Inc.</u>, 527 F.2d 394, 399 (5th Cir. 1976), construction of the terms used in § 203(o)

should not be so restrictive as to exclude from coverage activities that clearly go beyond mere "clothes changing" and involve such unusual, extraordinary things as steel-mesh gloves, plastic aprons, and soft and hard plastic sleeve guards.

The donning of such equipment is much different than the time spent by a police officer putting on a uniform and strapping on a holster.  The uniform is "clothes" because it takes the place of the clothing the officer was wearing before work.  Furthermore, while a police officer may drive to work in his uniform, it is not realistic to expect Tyson workers to drive to Tyson's chicken plants in the rural South in the summer wearing boots, arm guards, plastic aprons, and several layers of gloves over their ordinary clothing.  The equipment at issue here cannot be regarded as mere analogs to everyday clothing, like a uniform might be; the equipment is necessary not for the convenience or modesty of the employee, but required for the very specific needs of the employer for sanitation and safety.

Addressing the same issue in the context of a meat processing plant, the Department of Labor has determined that Section 203(o) "does not apply to the putting on, taking off, and washing of protective safety equipment" and therefore "cannot be excluded from hours worked."  Letter from John R. Fraser, Acting Administrator, Department of Labor, Dec. 8, 1997 (attached to plaintiff's

17

submissions as Exhibit 27).[10]  The DOL went on to opine that "clothes" as used in Section 203(o) "does not encompass protective safety equipment; common usage dictates that 'clothes' refers to apparel, not to protective safety equipment which is generally worn over such apparel and may be cumbersome in nature."  That interpretation of § 203(o) by the principal agency charged with enforcing the nation's labor laws is due some deference.

The court agrees that the term "clothes changing," when added to the FLSA in 1949, did not encompass the putting on, taking off, and cleaning of sanitary and safety equipment such as is at issue in this case.  The defendant has not provided any finding that such donning, doffing, and cleaning falls within the exemption, except in those cases where it was clear that the union and the employer grappled with the issue in negotiations and agreed upon a policy of nonpayment for activities that include the donning, doffing, and/or cleaning of safety and protective equipment.  Consequently, the motion for partial summary judgment as to the plaintiffs' claims based on the donning, doffing, and cleaning of sanitary and safety

---

[10]     Tyson argues that the opinion letter is not entitled to any deference; even if not due deference, however, the court agrees with the conclusion and finds that a reasonable interpretation of the statute is that clothes changing is a relatively narrow term that does not include all items that may be "worn" or "put on."

equipment before and after their workday, based on § 203(o), is due to be denied.

Even if donning and doffing of the sanitary and protective gear involved here can be regarded as "clothes changing" under § 203(o), the plaintiffs also argue that Tyson's failure to compensate workers for the donning, doffing, and cleaning is not within the exclusion of § 203(o) because the union never negotiated this term in connection with any collective bargaining agreement applicable to them. The defendant has failed to demonstrate what, if any, attention this issue has been given during contract negotiations. Clearly, Tyson has not presented the court with any collective bargaining agreement that by its "express terms" excludes time donning and doffing this equipment from plaintiffs' compensation. Moreover, there is no evidence that such donning and doffing has ever been a point of negotiation leading to a collective bargaining agreement. The evidence here does not establish that the question was raised during contract negotiations and then withdrawn or compromised by the union. The evidence is simply silent, and the court cannot say that Tyson has carried its burden of showing its entitlement to judgment as a matter of law on this point absent some indication that, in fact, the question has been raised and resolved in some fashion during contract negotiations.

Likewise, the court does not believe that non-payment for donning and doffing of safety equipment is within a "custom and practice under a bona fide collective-bargaining agreement." The "custom and practice" provision of § 203(o) is simply an alternative way of showing some form of agreement about an issue between a union and an employer. In the absence of an "express" term in the collective bargaining agreement, an employer can nonetheless show that it and the union have implicitly agreed on an issue by showing that the issue has been debated in contract negotiations. Certainly, the statutory language "custom and practice under a bona fide collective-bargaining agreement" means more than "this is the way we've always done it," for that amounts to nothing more than saying that once an illegal practice gets started, it becomes "immunized" from challenge over time. Mere silence alone cannot confer on a particular practice the status of a "custom and practice under a bona fide collective-bargaining agreement." Properly construed, the language requires some showing that the employer and the union have reached an agreement by implication that a certain practice is acceptable and, thus, the employer can take comfort in relying on it. In this case, Tyson has offered no evidence that non-compensation of donning and doffing by its employees either has been expressly negotiated or deliberately acquiesced to by the union to the detriment of its

20

members.  Thus, the non-compensation is neither an express term of any collective bargaining agreement nor a "custom and practice under a bona fide collective-bargaining agreement."

### B.  Washing

Tyson also has failed to offer any precedent for its contention that the cleaning of the gloves or other safety equipment used by plaintiffs constitutes "washing" within the ambit of § 203(o).  To the contrary, in Saunders, a case relied upon by Tyson, the court recognized that the cleaning of safety equipment is not "washing" within the meaning of Section 203(o) and could not be excluded from compensation on the basis of that statute.  This is in keeping with the view, espoused in the legislative history, that "washing" refers to the worker's act of "cleaning his [or her] person" at the beginning or end of each workday.  S. Rep. No. 81-640 (1949) reprinted in 1949 U.S.C.A.N. 2251, 2255.  The "washing" that was excluded from payment in Nardone was not a cleaning of gear in the workplace, as in this case, but the employee's showering of his person, done at home after his shift.   In Williams, the time spent washing to "decontaminate" the worker's person or clothing was paid as overtime.

In the instant case, the washing has less to do with personal hygiene than with the removal of chicken offal from equipment owned

21

by Tyson, for sanitation reasons.  Such cleaning is more akin to decontamination than to mere "washing up."  Tyson has failed to demonstrate that the time spent cleaning safety equipment is "washing" within the ambit of § 203(o) and has offered no compelling authority to support that position.  Consequently, Tyson's motion for partial summary judgment on the issue of "washing" based on the narrow exclusion set forth is § 203(o) is due to be denied.

## II. DONNING, DOFFING, AND CLEANING AS "WORK"

In a second motion for partial summary judgment filed by Tyson on December 27, 1999, the defendant argues that the activities of donning, doffing, and cleaning, along with waiting in line to obtain the required aprons and other equipment, are not compensable under the FLSA because the activities do not constitute "work." Both parties agree that the controlling definition of work under the FLSA, expressed by the Supreme Court, is: "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Tennessee Coal, Iron & R.R. Co v. Muscoda Local No. 123, 321 U.S. 590, 598, 64 S. Ct. 698, 703, 88 L. Ed. 949 (1944); see also, Anderson v. Mount Clemens Pottery, 328 U.S. 680, 691-92, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946); Dade

County v. Alvarez, 124 F.3d 1380, 1384 (11th Cir. 1997), cert. denied, 523 U.S. 1122, 118 S. Ct. 1804, 140 L. Ed. 2d 943 (1998).

Tyson makes much of the fact that the safety and sanitary equipment used by the plaintiffs is "lightweight" and "not cumbersome," and requires little physical exertion to put on or take off.  Plaintiffs have offered declarations that demonstrate that the process takes from about 8 to 30 minutes per day.  The court recognizes that other courts have found that donning and doffing a portion of the equipment at issue here is not "work."  See Reich v. IBP, Inc., 38 F.3d 1123, 1125 (10th Cir. 1994) aff'd sub. nom Metzler v. IBP, Inc., 127 F.3d 959 (10th Cir. 1997)(holding that the donning of earplugs, hard hats, safety shoes not compensable, but donning of bulky steel mesh protective gear compensable).  This court, however, is not willing to adopt that reasoning.

The instant case is different than IBP in that the safety gear in that case required only a "few seconds" to don.[11]  Id. at 1126.

_____

[11]    Of course, it is possible that Tyson will be able to show that the plaintiffs have exaggerated or misstated the time it takes to don and doff the equipment and that the activity is not compensable because it falls within the de minimis exception; at this stage, however, the time is a disputed fact, and because all the plaintiffs assert that the donning, doffing, and cleaning takes at least about 8 minutes per day to about an hour per day, it would not appear to fall under the de minimis exception.  See, e.g., Reich v. Monfort Inc., 144 F. 3d 1329 (10th Cir. 1998). Tyson has not raised this argument in its motion, although plaintiffs assert that the time spent should not be deemed de

More important, however, the Supreme Court has clearly expressed its intention that the burdensomeness of the activity be disregarded in an assessment of whether the activity is "work." The Supreme Court instead looks to whether the activity is "controlled or required" by the employer, and whether it is "primarily for the benefit" of the employer.   <u>Mount Clemens Pottery</u>, 328 U.S. at 693.[12]  A formulation that breaks down along whether the equipment is heavy or light, or easy or cumbersome to put on is too simplistic.   Rather, the essence of the Supreme Court's analysis of this issue turns not on whether the work is "burdensome," but whether it is for the purposes and benefit of the employer, as distinct from the personal convenience or wishes of the employee.

In this case, the activity clearly is required by the employer.   Tyson does not deny that the wearing of hair nets, smocks, boots, earplugs, arm guards, and other gear is mandatory, or that Tyson requires wearing of the gear in order to comply with state and/or federal law.   Tyson makes no argument that the hair nets benefit the employee or that the maintenance of a sanitary

_____

*minimis.*

[12]     Even in <u>IBP</u>, the court recognized that the special protective gear used by the knife workers at a meat-processing plant was compensable, noting that donning and doffing that "differ[s] in kind, not simply degree, from the mere act of dressing" are compensable.   38 F.3d at 1126.

workplace does not necessarily or primarily benefit Tyson.  To the contrary, common sense requires a finding that Tyson could not continue to operate its chicken-processing business if it failed to maintain a certain level of cleanliness in compliance with USDA regulations, or if it failed to follow OSHA regulations relating to employee safety.  The activities described by the Tyson employees differ in kind, not simply degree, from the noncompensable changing of clothes.

The cleaning of the equipment similarly is required by and benefits Tyson.  It is clear that in order to maintain the requisite level of cleanliness in its plants, Tyson must have its workers equipped with clean and sanitary knives, aprons, arm guards, and other equipment that comes into contact with the chicken.  There is simply no evidence, and logic does not compel the conclusion, that the cleaning of the gear primarily benefits the employee.

In this case, the court can comfortably conclude that the donning of smocks, plastic aprons, rubber gloves, steel-mesh gloves, and sleeve guards is done for the purposes and the benefit of the employer.  Tyson is required to meet certain safety and sanitation standards for its product, and clearly the equipment discussed here is used for that reason, to meet the sanitation standards necessary to market processed chicken.  While it might be

argued that the equipment shields employees from the blood and gore of the process, it can be argued equally that it assures that chicken is not contaminated by direct contact with employees and their clothing. Simply put, drawing inferences most favorably for the plaintiffs, the court cannot say that the donning of safety and sanitary equipment is **not** for the benefit of the employer and subject to its control. That being said, it is "work" under the FLSA.

Accordingly, the court finds that the donning and doffing of sanitary and safety equipment is "work" within the meaning of the FLSA because it is controlled by and required by Tyson, and because it primarily benefits Tyson and the chicken-processing business. The motion for partial summary judgment on this ground is due to be denied.

## IV. THE PORTAL-TO-PORTAL ACT

Tyson asserts that the activities of donning, doffing, and cleaning of safety and sanitation equipment are not compensable for the additional reason that they are "preliminary" or "postliminary" activities under Section 4(a) of the Portal-To-Portal Act of 1947. In passing the Act, codified as 29 U.S.C. § 254(a), Congress narrowed the definition of compensable work to exclude:

> (1) walking, riding or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a)(1) and (2). The Portal-to-Portal Act does not exclude all pre- or post-shift activity, however. Generally, such activities are compensable when they are "integral and indispensable" to the principal activity for which the employee is employed, and when the activity is predominantly in the employer's interest, rather than the employee's. See Lindow v. United States, 738 F.2d 1057, 1061 (9th Cir. 1984); Lee v. Am-Pro Protective Agency Inc., 860 F. Supp. 325, 327 (E.D. Va. 1994). Moreover, the concept of the "principal activity" of the employee is to be liberally construed. "Any activity which is 'an integral and indispensable part of' the principal activity is compensable" under the Portal-to-Portal Act. Barrentine v. Arkansas-Best Freight System, Inc., 750 F.2d 47, 50 (8th Cir. 1984)(quoting Steiner v. Mitchell, 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956)). Liberal construction is consistent with the goal of preserving the remedial purposes of the FLSA.

The issue raised by Tyson's motion for partial summary judgment based on the Portal-to-Portal Act is whether the activities of donning, doffing, and cleaning are preliminary and postliminary activities, or whether they constitute an integral and indispensable part of the chicken-processing duties for which they are employed.  Whether such activities constitute preliminary or postliminary duties that are noncompensable is a question of fact. See, e.g., Blum v. Great Lakes Carbon Corp., 418 F.2d 283, 286 (5th Cir. 1969), cert denied, 397 U.S. 1040, 90 S. Ct. 1361 (1970); Mitchell v. Southeastern Carbon Paper Co., 228 F.2d 934, 938-39 (5th Cir. 1955).

In Steiner v. Mitchell, 350 U.S. 247, 76 S. Ct. 330, 100 L. Ed. 267 (1956), the Supreme Court considered a similar issue, and examined both whether the activity at issue is required by law and whether the activity is compelled by the circumstances.   In Steiner, the Court ultimately required the employer to compensate workers in a battery plant for changing clothes and showering.  The Court noted that where the employees used caustic and toxic materials and were "compelled by circumstances, including vital considerations of health [and] hygiene, to change clothes and to shower" at the workplace, the activity should be compensated.  Id. at 248.  The Court further noted that the changing of clothes and the showering were "a recognized part of industrial hygiene

28

programs in the industry," required by state law, "indispensible to the performance" of their jobs, and "integrally related thereto." Id. at 251-252.

The Fifth Circuit Court of Appeals has explained that the Portal-to-Portal Act excludes from FLSA coverage only activities that predominantly benefit the employee. Dunlop v. City Elec., Inc., 527 F.2d 394 (5th Cir. 1976).[13]  In Dunlop, the court stated that the activity was noncompensable only where the activity is undertaken for the convenience of the employee, "not being required by the employer and not being necessary for the performance of their duties for the employer."  Furthermore, the Court of Appeals recognized that the definition of a principal activity must be construed liberally so as to effectuate the FLSA's broad remedial purpose of ensuring compensation for "any work of consequence performed for an employer, no matter when the work is performed." Id. at 398, citing Secretary's Interpretative Bulletin, 29 C.F.R. § 790.8(a).

The defendant cites several examples in which washing and clothes changing have been deemed not compensable, and argues that "in ordinary circumstances" clothes changing and washing are not

---

[13]    In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

compensable activities.  The court, however, declines to agree that the Tyson workers' donning, doffing, and cleaning of sanitary and protective gear is an "ordinary circumstance" that can be likened to a police officer donning his uniform, as defendant asserts.  As already discussed extensively, the need for Tyson to maintain a sanitary environment for chicken processing dictates the use of the equipment involved in this case.  Donning of the smocks, aprons, boots, and other gear in this case is directly related to that goal and, thus, integral and indispensable to the work the plaintiffs perform.  It is not merely preliminary or postliminary as those terms have been applied by the Supreme Court in Steiner or the Eleventh Circuit Court of Appeals in Dunlop.  Consequently, the court finds that Tyson has failed to demonstrate that the plaintiffs' claims for compensation for the donning, doffing, and cleaning of sanitary and protective equipment is noncompensable under the Portal-to-Portal Act, and the motion for partial summary judgment on this issue is due to be denied.

### V. MASTERCARD CLAIMS OF BROTHERS, BROWN, AND JOYNER

Tyson seeks summary judgment on the "mastercard" claims of individual plaintiffs Brothers, Brown, and Joyner.  In essence, Tyson asserts that the use of a mastercard time system is not *per se* illegal, and that Brothers, Brown, and Joyner are fully paid for

all the time they spend working on the production line.[14]   In support of these assertions, Tyson has presented evidence from Tyson supervisors who claim that the plaintiffs, whose shifts may not have corresponded exactly with the mastercard time, nevertheless worked the same number of hours as the mastercard indicated, and thus have been fully compensated.

In opposition to the motion, these plaintiffs assert that they worked more hours than the mastercard indicated and have not been compensated.   For example, plaintiff Brown states that she is required to arrive at the production line at 7:00 a.m., but must continue to work 5-10 minutes after the mastercard time ends at about 4:15 p.m.   Brown's declaration contradicts the evidence set forth by the defendant, which offers the declaration of Rosie James, who asserts that Brown was not required to report to her workstation until two minutes after the mastercard time begins, and is required to remain at her station only two minutes after the mastercard time ends, resulting in the number of hours worked

---

[14]   The issue of whether mastercard time is *per se* illegal is not dispositive of the issue, since even if mastercard use does not in itself constitute a violation of the FLSA, the use of mastercard to pay employees for less than the true "hours worked" would be violative of the FLSA and is, therefore, actionable. The court does not read the complaint to allege that any use of the mastercard system would be illegal, but rather to allege that Tyson uses the mastercard system in a manner which causes at least some employees to be paid for less time than they actually work.

equaling the number of hours recorded by mastercard.  Granted, if James's declaration is found to be true, plaintiff's claim will fail, but that is a question of fact and is not an issue to be decided on defendant's motion for summary judgment.

Similarly, plaintiff Brothers alleges that she is required to be at her work station at 6:15 a.m., or she is considered late. She further alleges that she must continue to work until she finishes all the work at her station, which requires her to work approximately six minutes after the mastercard time ends, or six minutes for which she is not compensated.  The defendant claims that Brothers is not required to report to the line until several minutes after the mastercard time begins.  Accordingly, there exists a disputed issue of fact as to the hours that Brothers worked and the hours for which she was paid.

The same scenario describes plaintiff Joyner, who testifies that she is not paid for all of the time that she works because she works before or after the mastercard time is recorded.  Tyson disputes the plaintiffs' declarations, but that does no more at this juncture than to create an issue of fact.  Consequently, the defendant's motion for partial summary judgment on the issue of the mastercard claims of plaintiffs Brown, Brothers, and Joyner is due to be denied.

32

## VI.  UNPAID MEAL PERIOD CLAIMS OF HATCHETT,
## MITCHELL, JOYNER, AND WOODWORTH

Tyson seeks summary judgment on plaintiffs' claims that they were improperly denied compensation for donning, doffing, and cleaning their sanitary and protective equipment during their unpaid meal breaks.  Tyson further seeks summary judgment in its favor against plaintiffs Hatchett, Mitchell, Joyner, and Woodworth, who claim they were improperly denied compensation for working in the production line during unpaid meal periods.  The motion as to the donning, doffing, and cleaning claims is due to be denied for all the reasons set forth *supra*.  The court finds that the working claims also raise a genuine issue of material fact, and the motion also is due to be denied as to those claims of Hatchett, Mitchell, Joyner, and Woodworth.

Plaintiff Hatchett has stated that she works without compensation for 10-15 minutes of each unpaid 30-minute break.  Although Tyson disputes that testimony, Hatchett has demonstrated that a genuine issue of material fact exists as to whether she is required to work without pay during breaks.  Similarly, Mitchell contends that, depending on her place in the production line, she works 2-12 minutes after the break begins, but is required to return to the line when the 30-minute paid break ends.  Again, the fact that Tyson claims Mitchell was allowed to leave for break when it began, and not 2-12 minutes later, does not sufficiently support

33

its motion for summary judgment on her claim that she works during meal periods and is not paid.

Plaintiff Woodworth clearly states that she works for the first 10-12 minutes of her breaks, but still is required to return before the 30-minute period ends. Her testimony, even if disputed, is sufficient to create an issue of fact that precludes summary judgment in favor of the defendant. Finally, plaintiff Joyner alleges that she must work from 2-7 minutes after the beginning of the break. She further alleges that she is required to work "much of those breaks without compensation." Tyson points out that Joyner does not describe the method by which the end of her break is calculated. However, such lack of clarity does not eviscerate her claim. At the least, Joyner, too, has presented an issue of fact and the defendant's motion for partial summary judgment on the unpaid meal break claims of these four plaintiffs is due to be denied.

## VII.  CONCLUSION

Based on the foregoing undisputed facts and legal conclusions, the magistrate judge RECOMMENDS that the motions for partial summary judgment filed by Tyson Foods, Inc. be DENIED.

Any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is

filed in the office of the Clerk.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.

The Clerk is DIRECTED to serve a copy of this order upon counsel for all parties.

DATED this _13th_ day of February, 2001.


T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE