# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **FOX, et. al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Case No. 4:99-CV-1612-VEH** |
| ) | |
| **TYSON FOODS, INC.** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Pending before the Court is: (1) Plaintiffs' Motion for Court Supervised Notice to Potential Collective Action Members (doc. 532); and (2) Defendant's Renewed Motion to Exclude the Reports of Plaintiffs' Expert Witnesses (doc. 573). These matters have been briefed extensively; the former was the subject of a hearing before the undersigned on October 24, 2006. Both motions are ripe for review. For the reasons articulated herein: (1) Plaintiffs' Motion for Notice is due to be **DENIED**; and (2) Defendant's Motion to Exclude is due to be **GRANTED**.

**I.      Plaintiffs' Motion for Collective Action Notice**

### Background

The Named Plaintiffs, eleven employees from eight Tyson chicken-processing facilities located in seven different states, filed this collective action on June 22,

1999, against their employer, Tyson Foods, Inc., challenging a single, discrete practice: Tyson's refusal to pay them for the time they spend putting on, taking off, cleaning, sanitizing, and stowing the safety and sanitary gear that they must wear while working on the chicken-processing line. (Collective Action Complaint,¶¶ 5-15).  This gear includes plastic sleeves, plastic aprons, smocks, rubber and cotton gloves, hairnets, earplugs, and, for those employees who work with knives or scissors, mesh gloves and hard plastic arm guards.  Employees must put on and sanitize this gear prior to the start of paid time; must remove and clean this gear at the outset of unpaid breaks, and then put the gear back on and sanitize it before the end of unpaid breaks; and must remove, clean, and stow this gear after paid time concludes.  This process is referred to as "donning and doffing."

Tyson is the nation's largest chicken-processing company.  Since 1996 it has operated up to 59 chicken-processing facilities, primarily in the southeast.  Five of these facilities are located in Northern Alabama.  Approximately 50,000 non-exempt workers are employed at any given time in its chicken-processing facilities.

Chicken processing is performed at Tyson's plants on a production line on which workers perform all aspects of labor associated with the processing process. Chickens arrive at the processing plants alive and are hung on the line.  Employees at each stage of the line perform a processing task, from killing the chickens near the

beginning of the line, to cutting or sawing the chicken into pieces as they move along the line, to packing the chicken parts at the end of the line. Each of these tasks is performed by an employee specifically trained and employed to complete the function.

Plaintiffs allege that all employees engaged in chicken processing are required to wear a variety of safety and sanitary gear, both to protect them from environmental conditions and possible injury, consistent with Occupational Safety and Health Administration ("OSHA") requirements, and to protect the chicken from contamination, consistent with United States Department of Agriculture ("USDA") requirements. Plaintiffs state that safety equipment is required because employees work with sharp scissors, knives, and moving machinery that can cause serious injury. In addition, Plaintiffs speculate that some employees may be injured by the chickens as they peck or scratch.

Plaintiffs contend that the danger of the chicken-processing line is enhanced by its speed. Live hangers at the front of the line are expected to hang between 28 and 31 birds per minute. At other points on the line, birds may move as fast as 70-90 birds per minute. Plaintiffs further argue that other dangers that require safety equipment are the result of the working environment. For example, Plaintiffs offer that the air in the "live hang" area is filled with dust, feathers, and chicken excrement.

Some sections of the line are open to the outdoors, while others are kept cold (32 to 50 degrees) to prevent spoilage. Much of the plant is wet.

Plaintiffs assert that all Tyson plants implement a safety program designed and monitored at the corporate level and that sanitation policies designed to protect food safety are also governed by Tyson.

Plaintiffs allege that Tyson's regulations, in compliance with USDA and OSHA regulations, and the work conditions at chicken processing plants, require employees to wear the following safety and sanitary equipment: (a) a smock, which covers employees' clothes and prevents the clothing from contaminating the chickens; (b) a plastic apron that shields employees from chicken blood, water, and fluids that would otherwise soak them during the course of a day; (c) plastic sleeve covers, because long sleeved shirts extend below the arms of a smock, and must be covered to prevent contamination of the chicken; (d) a hairnet, to prevent contamination of the chicken; (e) cotton liner gloves, for warmth when handling cold chicken or to protect hands from scratches in live hang; (f) rubber outer gloves, which prevent contamination of the chicken and keep cotton liner gloves or workers' hands dry; (g) ear plugs which prevent hearing damage; and (h) boots or slip resistant shoes, to protect employees' feet from being soaked and prevent injury on slippery floors. In addition, Plaintiffs contend that employees who work with knives, scissors, or saws

must wear special cut resistant gloves. Plaintiffs further offer that many employees are also required to wear safety glasses, hard plastic arm guards, which protect the employees' arms from being cut by knives, and hard hats or "bump caps;" also, employees who work on "live hang" or the "kill" section often have to wear a face shield or dust mask. Plaintiffs maintain that much of this equipment is required by OSHA or USDA regulations.

Plaintiffs allege that, at certain processing plants, Tyson does not pay the Named Plaintiffs for time spent donning and doffing the safety gear required by each of their specific jobs. The parties agree that Tyson calculates pay for most of its line employees using "line" or "mastercard" time. Under this system, Tyson pays employees only for time they spend on the processing line, as recorded on a departmental time card called the "mastercard." Plaintiffs assert that this system is designed to, and does, exclude time employees spend on donning and doffing from the time for which employees are paid.

The parties disagree as to whether the mastercard system of timekeeping, and its exclusion of donning and doffing from compensable time, is the product of corporate policy. There is, however, agreement among the parties that only Tyson's CEO could institute such a policy. Also, the parties disagree as to whether the intra-plant managers have the authority to implement a policy of compensating employees

for time spent on donning and doffing. The evidence before the Court establishes that Tyson does not employ a uniform policy of not compensating employees for time spent on donning and doffing safety gear.

Plaintiffs assert that employees must put on their equipment and sanitize themselves and the equipment before they arrive at the line for work. Employees generally must be on the line at their position by the time that paid time begins. Plaintiffs allege that Tyson does not compensate its employees for any of the time they must spend donning and sanitizing their required safety and sanitary equipment at the beginning of their shift.

Tyson employees generally are not paid for two 30 minute breaks each shift, including the time spent donning and doffing at the beginning and end of each break. Plaintiffs assert that all employees must remove, clean, and store at least some of their required safety and sanitary equipment during unpaid time at the outset of their breaks; similarly, employees must begin to don their required safety and sanitary equipment and sanitize before the end of their break. Plaintiffs estimate that employees generally have 60 minutes deducted from paid time each day.

Plaintiffs state that, at the end of the shift, paid time ends for all employees when the mastercard is clocked out, at which time employees may leave the line. Plaintiffs allege that employees, however, must remove and clean their required safety

and sanitary equipment after paid time has ended. Plaintiffs further allege that this process takes even longer at the end of the day than it does at breaks, because the equipment is covered with chicken remnants and blood and must be cleaned thoroughly before it is returned or left in a locker overnight.

## Standard of Review

The Fair Labor Standards Act ("FLSA") authorizes collective actions as follows:

> An action ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought.

29 U.S.C. § 216(b).[1] A district court, in its discretion, may authorize the sending of notice to potential class members in a collective action in "appropriate" cases. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 886-87 (11th Cir. 1983). The Supreme Court has endorsed collective actions in FLSA cases when it permits the "efficient resolution in one proceeding of

---

[1] A collective action under Section 216(b) differs from a Rule 23 class action in that an individual does not become a party to the Section 216(b) case unless and until he gives his consent in writing to become a party, i.e., "opts-in" to the action, whereas a party must affirmatively "opt-out" of a case proceeding as a Rule 23 class action. See *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

common issues of law and fact arising from the same alleged ... activity." *Hoffman-LaRoche*, 493 U.S. at 170.

The Court of Appeals for the Eleventh Circuit has endorsed a two-step approach to determining whether to certify a collective action under Section 216(b).

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and affidavits which have been submitted-whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

*Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-24 (5th Cir. 1995)).

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-i.e. the original plaintiffs-proceed to trial on their individual claims.

8

*Id.*[2] During the notice stage, the court should determine: (1) whether there are other employees who wish to opt-in to the action; and (2) whether those employees are "similarly situated" with respect to their job requirements and pay provisions. *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

The Plaintiffs bear the burden of establishing that they are similarly situated with the group of employees they wish to represent.[3] *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). This burden, however, is not heavy. Applying the "fairly lenient standard" of the notice stage, plaintiffs are not required to show that they hold identical positions but, rather, must show only that their positions are similar to those positions held by the putative class members. *Hipp*, 252 F.3d at 1217; *Grayson*, 79 F.3d at 1096. Courts have held that the notice stage requires only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102; *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 508 (M.D. La. 2005) (citation omitted); *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D. N.J. 1988). The

---

[2] Although *Hipp* involved a collective action brought under the Age Discrimination in Employment Act of 1967, the Eleventh Circuit has made clear that the analysis set forth in that case applies with equal force to FLSA collective actions. *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n. 2 (11th Cir. 2003).

[3] The "similarly situated" requirement applicable to Section 216(b) collective actions is "more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996).

Eleventh Circuit has stated that "a unified policy, plan, or scheme of discrimination may not be required to satisfy" the similarly-situated requirement of Section 216(b). *Hipp*, 252 F.3d at 1219 (quoting *Grayson*, 79 F.3d at 1095). Nevertheless, a plaintiff "must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Marsh v. Butler County Sch. Sys.*, 242 F.Supp.2d 1086, 1093 (M.D. Ala. 2003); *see also Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416 (D. Or. 2002) (putative class members must "share common identifiable facts or legal theories"); *Williams v. Accredited Home Lenders, Inc.*, 2006 WL 2085312, *3 (N.D. Ga. 2006).

This case has not proceeded pursuant to the two-tiered approach articulated in *Hipp*. The posture of the case at bar is such that the first-tier recommended in *Hipp* is inapplicable. This action, filed in 1999, has gone through extensive discovery and cannot be classified as being at an "early stage" of litigation.[4] In addition, when, on March 6, 2000, Magistrate Judge Putnam heard oral argument on Plaintiffs' original motion for court supervised notice to collective action members (filed on October 15, 1999; doc. 34), the Court did not have the benefit of the *Hipp* decision, and no order

---

[4] This case was reassigned to the undersigned judge on June 28, 2004 (see docs. 509, 510) and, by request of the parties, was stayed (see doc. 519) until November 28, 2005 (see doc. 522).

was entered on Plaintiffs' original motion. Now, six years later, discovery is largely complete and certification of the Plaintiffs' class under the more lenient standard of the first-tier in *Hipp* would be unjust, inconsistent with prior Orders of this Court, and would be contrary to the interests of judicial economy.[5]

Other courts have skipped the first-tier "notice" step in cases, such as the case at bar, where extensive discovery has been completed. In *Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561 (N.D. Ala. 1995), the court reached the conclusion, in a case procedurally similar to the case at bar, that the two-tiered approach is inappropriate where extensive discovery has been completed prior to a court's ruling on a motion for notice.[6] The court in *Brooks* ordered discovery prior to ruling on a motion for notice and determined that, due to its access to a wealth of evidence, acquiescence to the first-tier, which was later adopted in *Hipp*, would be inappropriate. The *Brooks* court, having distinguished the two-tiered test, made factual determinations on the "similarly situated" issue in light of the evidence

---

[5]In the papers Plaintiffs filed to make the Court aware of the Eleventh Circuit's holding in *Hipp*, the Plaintiffs conceded that the two-tiered analysis recommended in *Hipp* is inappropriate in the instant action due to discovery being near to completion. The Plaintiffs urged the Court to enter a final certification of the proposed collective action while taking into account the evidence produced through discovery.

[6]Plaintiffs argue that the Eleventh Circuit's holding in *Grayson* overturned the district court's decision in *Brooks*. The Court does not read the reasoning of *Grayson* to be in conflict with the Eleventh Circuit's holding in *Brooks*.

produced through discovery. *See also Williams*, 2006 WL 2085312 at *3 (holding that it is appropriate to skip the first step articulated in *Grayson* where the parties have engaged in discovery such that the court can make a decision as to whether a case is appropriate for collective action). The Court finds the holdings in *Brooks* and *Williams* persuasive. In light of the procedural history of the instant action as well as the abundance of discovery, the Court will issue findings as to the "similarly situated" issue based on the extensive record available at this time and will determine whether this case is appropriate for collective adjudication.

## Analysis

The Named Plaintiffs contend that all members of the proposed plaintiff class are similarly situated in that they are all workers in chicken processing plants owned and operated by Tyson and in that Tyson does not compensate the Plaintiffs for the time spent donning and doffing the required protective gear. After extensive discovery, the Named Plaintiffs have not put forth substantial evidence that the proposed class members are the victims of a single plan, that is, Tyson's "plan" not to compensate for donning and doffing time, nor can the Named Plaintiffs' claims be adjudicated without individualized determinations. Therefore, certification of this collective action is improper.

The evidence before the Court is that Tyson does not maintain a single,

uniform plan among its chicken processing plants of not compensating employees for time spent donning and doffing protective gear. To the contrary, Tyson has presented uncontroverted evidence that clearly demonstrates that some employees, who are members of the Named Plaintiffs' proposed class, are compensated for donning and doffing time at a number of its facilities on a plant-by-plant, department-by-department, and even on a line-by-line basis. Also, all parties have submitted evidence that the only way in which Tyson could adopt a corporate-wide plan of not compensating its employees for the donning and doffing of safety gear is at the direction of Tyson's CEO. There is no evidence whatsoever that Tyson's CEO has directed that such a plan be adopted. The only conclusion to be drawn from this evidence is that Tyson does <u>not</u> have a single plan to not compensate employees for donning and doffing time. Rather, there is evidence before the Court which indicates that the decision regarding compensation for donning and doffing time rests with the individual plant managers, department heads, or line managers. While the Named Plaintiffs allege that they have each not been compensated for time spent donning and doffing safety gear, this alleged injury is not the result of a single decision or plan on Tyson's part; therefore, the members of the proposed collective action class cannot be similarly situated as the Named Plaintiffs propose.

Also, Plaintiffs' contention that the members of the proposed class are similarly

situated fails in that collective adjudication is not practically feasible. Without entering into a lengthy discussion on this point, the Court takes note that the Named Plaintiffs' proposed class would include approximately 250,000 members. These current and former Tyson employees are distinct from one another in that they are or were employed, over a period of roughly nine years, in different positions, with different pay grades, at different plants, on different lines, and in multiple states.[7] The Named Plaintiffs are 11 current or former Tyson employees at 8 of Tyson's 54 chicken processing facilities. Since this case was filed, over 5,000 Tyson employees from 39 of Tyson's chicken processing plants have filed consents to join this action. Simply put, adjudication of this action as a collective action is not manageable or appropriate given the evidence before the Court regarding inter-plant and intra-plant inconsistencies as well as the obvious differences among the members of the

---

[7]The Named Plaintiffs urge the Court to toll the statute of limitations in this case as to all potential plaintiffs beginning on March 6, 1997, through the date of this Memorandum Opinion. The FLSA provides a two year statute of limitations for routine violations and a three year statute of limitations for willful violations. 29 U.S.C.A. § 255(a). Without citing any authority, the Plaintiffs contend that it is within the jury's providence to determine whether the alleged FLSA violation in the case at bar was done willfully. The date of March 6, 1997, is three years prior to the date on which the Court originally heard oral argument on Plaintiffs' Motion for Notice. The Magistrate Judge who heard the oral argument on March 6, 2000, did not enter a ruling on Plaintiffs' Motion for Notice. Thereafter, the case was transferred to another district judge from the original district judge assigned to this case. Plaintiffs' Motion for Notice was still not decided on the merits before the case was transferred to the undersigned judge on June 6, 2004. The case was thereafter stayed, at the request of the parties, pending the U.S. Supreme Court's decision in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S.Ct. 514 (2005). Despite the length of time between the Plaintiffs' original Motion for Notice and this Court's ruling, the Court will not toll the statute of limitations as the Plaintiffs request.

proposed class (as to what each of them dons and doffs).

As the Named Plaintiffs have not demonstrated that the proposed class of plaintiffs are similarly situated, the Motion for Notice is due to be **DENIED**.

In addition, the evidence before this Court is that there are not only variations among the members of the proposed class, but that there are variations among the Named Plaintiffs such that collective adjudication among those plaintiffs is inappropriate. As the Named Plaintiffs are or were employed at different plants with different job titles and different pay grades, the Named Plaintiffs' claims are subject to individualized defenses and are properly adjudicated in separate lawsuits.

## II.  Defendant's Motion to Exclude

The Named Plaintiffs, in support of their Motion to Exclude, rely on the expert reports of Dr. Robert Radwin and Dr. Stephen Schneider for the purpose of establishing the amount of time spent by the average Tyson employee on the donning and doffing activities during a typical workday. Dr. Radwin's assistants videotaped employees in the eight plants where the Named Plaintiffs have worked. His report purports to measure two periods of time at the beginning and end of each shift: (1) the total time elapsed between when the first employee begins to don and when the first employee begins working on the production line and the total time elapsed between the first employee's conclusion of work on the production line and the last

15

employee's completion of all doffing and sanitizing activity; and (2) the time between the first employee's punch-in and the first employee's donning activity and the time between the last employee's doffing activity and the last employee's punch-out. For the same eight plants, Dr. Schneider reviewed Tyson's time records for employees, and his report purports to measure the total amount of uncompensated time that Tyson workers spend at Tyson's plants each day including the time between punch-in and the start of paid time and the time between the end of paid time and the punch-out time. The Named Plaintiffs assert that, by combining the results of these two reports, the amount of unpaid time spent on donning and doffing activities can be computed for the employees at all eight plants at issue.

Tyson argues that these experts' testimony should be excluded because: (1) the reports do not measure things that are relevant to an issue in litigation; and (2) the reports fail to satisfy the admissibility requirements of Federal Rules of Evidence Rule 702.

The Court takes note that the expert opinions offered by the Named Plaintiffs are premised upon the false assumptions that Tyson's policies are uniform at the eight different plants which are the subject of the experts' reports and that identical equipment is donned and doffed by the employees at the eight plants, or even that the same equipment is used by the employees within each individual plant. There is

evidence before the Court which proves each of these assumptions false and causes the Named Plaintiffs' expert reports to be unreliable on their face. Pursuant to Federal Rule of Evidence 702, the Court is not under any obligation to consider opinions which are based on false assumptions nor shall the Court ponder unreliable expert testimony. The Defendant's Motion to Exclude is due to be **GRANTED** in that Dr. Radwin's and Dr. Schneider's reports are based on premises which have been determined to be erroneous.

A separate Order will be issued consistent with this Memorandum Opinion.

**DONE** this 15th day of November, 2006.

_____
 **VIRGINIA EMERSON HOPKINS**
United States District Judge